# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

MARIA D.C. ALBINO,

                                1:17-cv-02590-NLH

                    Plaintiff,

                                **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

---

**APPEARANCES:**

SAMUEL FISHMAN
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116
      *On behalf of Plaintiff*

HEATHER TASHMAN FRITTS
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123
      *On behalf of Defendant*

**HILLMAN**, District Judge

      This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] and Supplemental Security Income

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number
of quarters of insured employment has suffered such a mental
or physical impairment that the claimant cannot perform
substantial gainful employment for at least twelve months.  42
U.S.C. § 423 et seq.

("SSI")[2] under Title II and Title XVI of the Social Security

Act.[3]  42 U.S.C. § 401, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of

disability, February 27, 2013.  For the reasons stated below,

this Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On May 7, 2013, Plaintiff, Maria D.C. Albino,

protectively filed an application for SSI and DIB,[4] alleging

---

[2] Supplemental Security Income is a program under the Social
Security Act that provides supplemental security income to
individuals who have attained age 65, or are blind or
disabled.  42 U.S.C. § 1381 et seq.

[3] The standard for determining whether a claimant is disabled
is the same for both DIB and SSI.  See Rutherford v. Barnhart,
399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted).
DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599,
and the parallel SSI regulations are found at 20 C.F.R. §§
416.900-416.999, which correspond to the last two digits of
the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20
C.F.R. § 416.945).  The Court will provide citations only to
the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410,
411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and
regulations governing the determination of disability are the
same for both disability insurance benefits and [supplemental
security income]," "[w]e provide citations only to the
regulations respecting disability insurance benefits").

[4] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to

that she became disabled on February 27, 2013.[5]  Plaintiff

claims that she can no longer work at her previous jobs of

assembly line worker and pharmacy technician because she

suffers from migraines, Hepatitis C, and adjustment disorder

with depressed mood and anxiety.

Plaintiff's initial claim was denied on September 16,

2013, and upon reconsideration on October 28, 2013.  Plaintiff

requested a hearing before an ALJ, which was held on April 28,

2015.  On August 24, 2015, the ALJ issued an unfavorable

decision.  Plaintiff's Request for Review of Hearing Decision

was denied by the Appeals Council on February 24, 2017, making

the ALJ's August 24, 2015 decision final.  Plaintiff brings

this civil action for review of the Commissioner's decision.

---

the claimant.  See SSA Handbook 1507; SSR 72-8.

[5] Even though Plaintiff contends that her onset date of
disability is February 27, 2013, the relevant period for
Plaintiff's SSI claim begins with her May 13, 2013 application
date, through the date of the ALJ's decision on April 28,
2015.  See 20 C.F.R. § 416.202 (claimant is not eligible for
SSI until, among other factors, the date on which she files an
application for SSI benefits); 20 C.F.R. § 416.501 (claimant
may not be paid for SSI for any time period that predates the
first month she satisfies the eligibility requirements, which
cannot predate the date on which an application was filed).
This difference between eligibility for SSI and DIB is not
material to the Court's analysis of Plaintiff's appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  <u>Id.</u> (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his

> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although
an ALJ, as the fact finder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart,
94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial
review, a district court is not "empowered to weigh the
evidence or substitute its conclusions for those of the fact-
finder." Williams, 970 F.2d at 1182. However, apart from the
substantial evidence inquiry, a reviewing court is entitled to
satisfy itself that the Commissioner arrived at his decision
by application of the proper legal standards. Sykes, 228 F.3d
at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.
1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.  Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any
substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be
expected to result in death, or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this
definition, a Plaintiff qualifies as disabled only if his
physical or mental impairments are of such severity that he is
not only unable to perform his past relevant work, but cannot,
given his age, education, and work experience, engage in any
other type of substantial gainful work which exists in the
national economy, regardless of whether such work exists in
the immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired if he
applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis
added).

The Commissioner has promulgated regulations[6] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-
step process is summarized as follows:

> 1.  If the claimant currently is engaged in substantial
>     gainful employment, he will be found "not disabled."

---

[6] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  Because the ALJ issued her
decision prior to that effective date, the Court must employ
the standards in effect at the time of his decision.

2.    If the claimant does not suffer from a "severe
      impairment," he will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P,
      Appendix 1 <u>and</u> has lasted or is expected to last for
      a continuous period of at least twelve months, the
      claimant will be found "disabled."

4.    If the claimant can still perform work he has done
      in the past ("past relevant work") despite the
      severe impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the
      claimant's ability to perform work ("residual
      functional capacity"), age, education, and past work
      experience to determine whether or not he is capable
      of performing other work which exists in the
      national economy.  If he is incapable, he will be
      found "disabled."  If he is capable, he will be
      found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof.  <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722

F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of

the analysis, the burden is on the claimant to prove every

element of his claim by a preponderance of the evidence.  <u>See</u>

<u>id.</u>  In the final step, the Commissioner bears the burden of

proving that work is available for the Plaintiff: "Once a

claimant has proved that he is unable to perform his former

job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

## C. **Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of migraine headaches and adjustment disorder were severe. At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") precluded her from performing her past work as an assembly line worker or pharmacy technician, but her RFC rendered her capable of performing unskilled work at all exertional levels (steps four and five).[7]

---

[7] <u>See</u> 20 C.F.R. § 404.1568 (explaining that unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the

When Plaintiff filed her appeal, Plaintiff's main basis
for seeking reversal concerned her Hepatitis C condition.
Plaintiff argued that the ALJ violated Third Circuit precedent
by providing "little weight" to an opinion by what she
understood to be her treating "psychiatrist," Andres Ayala.
Ayala had rendered an opinion regarding how Plaintiff's
Hepatitis C affected her.  Plaintiff further argued that the
ALJ erred by failing to deem her Hepatitis C a "severe
impairment," and, as a result, erred at step five by not
considering the effects of Hepatitis C in her determination
that Plaintiff was capable of the full ranges of unskilled work
at all exertional levels.

During the Court's review of Plaintiff's appeal, the Court
raised with the parties an issue concerning Ayala's credentials
as a psychiatrist disclosed in his otherwise unrelated criminal
prosecution.  On November 21, 2018, this Court issued an Order
to Show Cause in this case and in United States v. Andres
Ayala, 1:17-cr-00176-NLH-1, regarding the disclosure of two
paragraphs (¶¶ 66, 67) in Ayala's Final Presentence
Investigation Report prepared on September 14, 2017.  It

---

national economy, we classify jobs as sedentary, light,
medium, heavy, and very heavy.").

appeared to the Court that Ayala was not a licensed

psychiatrist or even licensed as a doctor in the United States,

and moreover that the parties were misinformed about Ayala's

credentials and unaware of his criminal prosecution. (Docket

No. 14.) Neither the Government nor Ayala objected to the

disclosure of the content of paragraphs 66 and 67, the Court

ordered their disclosure, and the Court directed Plaintiff and

Defendant in this case to file supplemental briefs in response

to the information.[8] (Docket No. 15.)

---

[8] The content of ¶¶ 66 and 67 of the Final Presentence
Investigation Report is as follows:

> 66. In 1975, the defendant [Andres Ayala]
> reportedly graduated from Daniel Alcides Carrion High
> School in Peru. From 1975 to 1978, the defendant worked
> and was not enrolled in any educational program. From
> 1978 to 1988, the defendant attended Instituto
> Politecnico National University in Mexico City, Mexico,
> graduating with a Medial Doctorate degree with a
> specialty in obstetrics. In addition, from January 2002
> to February 2003, Ayala attended Transinde S.C., a job
> training program in Mexico City, Mexico. Ayala completed
> a psychology and therapeutic management course, earning a
> diploma. Ayala denied any other educational ventures.
> However, the defendant expressed an interest in
> continuing his medical education in the future.

> 67. Ayala was a licensed medical doctor in Mexico,
> but does not hold any professional licenses in the United
> States. According to the defendant, he "sent papers" to
> the New Jersey Medical Board for equivalency
> considerations. However, Ayala was advised he could only
> work as a mental health counselor without the authority
> to write prescriptions.

In her supplemental brief, Plaintiff argues that the ALJ's decision should be reversed and her claim remanded for a new hearing because both she and the SSA were innocent victims of fraud by Ayala, whose crime impacted others such as Dr. Abraham Horn who also treated Plaintiff and sought Ayala's medical opinion. Plaintiff argues that remand permits this claim to be re-adjudicated consistent with ordinary due process. (Docket No. 16.) In contrast, Defendant argues that Ayala's criminal conduct does not impact the ALJ's decision. Defendant argues that the ALJ afforded Ayala's opinion little weight, and Ayala's purported medical opinion as to the disabling nature of Plaintiff's Hepatitis C was therefore not factored into the ALJ's assessment of Plaintiff's RFC, and thus does not affect the determination that substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled. (Docket No. 17.) The Court agrees with Defendant, and a review of the ALJ's analysis shows why.

In determinating at step two that Plaintiff's Hepatitis C was not "severe," the ALJ noted that in order for a claimant to meet the step two "severe impairment" standard, the claimant must demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more

than a minimal effect on an individual's ability to work." SSR 85-28. The ALJ then detailed the medical evidence that referred to Plaintiff's Hepatitis C.

The ALJ noted that the medical evidence showed Plaintiff's only treatment for Hepatitis C was medication, but there was little objective record evidence of such care. On February 28, 2013, Plaintiff was seen by Dr. Horn at South Jersey Gastroenterology for a Hepatitis C follow-up. Plaintiff's physical examination was normal and revealed no stigmata of chronic liver disease. On March 14, 2013, Dr. Horn wrote to Ayala, requesting his perspective as Plaintiff's psychiatrist whether it was okay to start Plaintiff on Interferon to manage her Hepatitis C. Dr. Horn also stated that he was happy to see that Plaintiff was going to have ongoing monitoring with Ayala to look for psychiatric side effects from Interferon. On July 30, 2013, Plaintiff was examined by a state consultative internal medicine doctor, who reported essentially normal findings as to Plaintiff's physical condition.

Following Plaintiff's February 28, 2013 visit with Dr. Horn, there are no records regarding her Hepatitis C condition for the next year. On April 16, 2014, Plaintiff visited Dr. Christina Capanescu at Cooper Digestive Health Institute, where

Plaintiff's physical examination was normal and she was not jaundiced. Subsequent lab work and an ultrasound of Plaintiff's liver on May 7, 2014 revealed no sign of liver disease. On October 2, 2014 and December 18, 2014, Plaintiff returned to Dr. Capanescu for follow-up examinations, and Dr. Capanescu found no issues related to Hepatitis C, although Dr. Capenescu noted that Plaintiff reported she was nervous/anxious and had insomnia, and suffered from nasal sinus congestion. Dr. Capenescu also prescribed Plaintiff a newly approved Hepatitis C medication, Harvoni (ledipasvir/sofosbuvir).[9]

On May 30, 2014, Ayala completed a "Hepatitis C Residual Functional Capacity Questionnaire." The ALJ noted in her decision:

> [Ayala] provided an opinion that the claimant is
> restricted to less than sedentary work and from being able
> to perform several basic work-related activities on a
> sustained basis (i.e., eight hours a day, five days a
> week, or an equivalent work schedule) (Exhibit 7F). The
> Administrative Law Judge gives little weight to this
> opinion because Dr. Ayala is a psychiatrist and his
> opinion of limitations due to the claimant's Hepatitis C
> is beyond his medical specialty. Moreover, the opinion is
> clearly not supported by gastroenterology treatment
> records, as discussed in this decision.

(R. at 25.)

_____

[9] At the time of the ALJ hearing on April 28, 2015, Plaintiff had been on Harvoni for three months.

Plaintiff originally argued that the ALJ's dismissal of Ayala's opinion was reversable error because a treating physician's opinions are entitled to great weight, and Ayala, believed to be a medical doctor and a primary treatment provider for Plaintiff, treated Plaintiff as a team with her other physicians. Thus, Plaintiff argued, the ALJ's rejection of Ayala's opinion as to the effects of Plaintiff's Hepatitis C because he is not a Hepatitis C specialist is improper.

Even though a treating physician's opinions are typically entitled to "great weight," an ALJ may reduce her reliance upon a treating physician's opinions if those opinions are inconsistent with other medical evidence, and if she explains her reasoning. Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."), cited by Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the

result, but also some indication of the evidence which was rejected.").

Here, unlike cases where the ALJ rejects the treating physician's opinions in favor of consultative physician's opinions, the ALJ fully credited Plaintiff's treating physicians who specifically treated Plaintiff for Hepatitis C. As for Ayala, who primarily provided care for Plaintiff's mental impairments, the ALJ properly explained why she afforded little weight to his opinion as to the effects of Plaintiff's Hepatitis C, assuming as everyone else had to that point that Ayala was in fact a licensed doctor. The ALJ explained that as opposed to Plaintiff's doctors who specifically treated Plaintiff for Hepatitis C, Ayala's opinion as to the effects of her Hepatitis C were contrary to the more comprehensive medical records of Plaintiff's Hepatitis C doctors.

Eliminating or discounting Ayala's opinion because he is not actually a physician only reinforces the ALJ's assessment of his opinion and her conclusion that Plaintiff's Hepatitis C was not a severe impairment. By discounting Ayala's opinion as to the impact of Plaintiff's Hepatitis C on her ability to work, the ALJ's RFC determination was not based, even in part, on Ayala. Thus, remand is not warranted because nothing would

change the result.  Having a separate and independent reason to question Ayala's opinion – his lack of credentials – does not cast doubt on the ALJ's decision to question it based on a lack of support in the medical record.  Indeed, in light of the revelation of Ayala's false medical credentials, the ALJ's assessment of Ayala's opinion is even more prescient.

The recent decision of <u>Hicks v. Commissioner of Social Security</u>, -- F.3d ---, 2018 WL 6072336 (6th Cir. Nov. 21, 2018), cited by Plaintiff, is distinguishable.  That case involved a massive fraud that sadly and disturbingly involved the administrative decision making process itself.  Although the Court recognizes that Plaintiff was a victim of her chosen private medical provider in that her psychiatric treatment may not have been compliant with the proper standard of care, Ayala's fraud ultimately has no impact on the outcome of her disability determination and her appeal to this Court.  The Court therefore finds that substantial evidence supports the ALJ's decision at step two.

The Court now turns to Plaintiff's other arguments on appeal, which flow from her contention that the ALJ should have considered her Hepatitis C to be severe, and accordingly should have considered her Hepatitis C in combination with her mental

impairments in the subsequent steps. Even if the Court were to accept Plaintiff's argument, substantial evidence in the record supports the ALJ's ultimate conclusion that Plaintiff retained the RFC to perform the full range of unskilled work at all exertional levels.[10]

The medical evidence, relating to both Plaintiff's Hepatitis C as well as her severe impairments of migraines and adjustment disorder with depressed mood and anxiety, is detailed in the ALJ's decision, along with the in-person observations of Plaintiff by the Social Security Administration staff, and Plaintiff's subjective complaints and testimony. Based on a totality of the objective medical evidence and Plaintiff's own reports of her daily capabilities, the ALJ determined Plaintiff's RFC, which reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).[11]

In making a RFC determination, the ALJ was required to do

---

[10] The ALJ also found that Plaintiff must avoid concentrated exposure to noise, was limited to simple and routine tasks such as found in unskilled work, and have only occasional social interaction.

[11] The RFC finding is a determination expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

the following:

> In determining whether you are disabled, we consider all
> your symptoms, including pain, and the extent to which
> your symptoms can reasonably be accepted as consistent
> with the objective medical evidence and other evidence.
> By objective medical evidence, we mean medical signs and
> laboratory findings . . . . By other evidence, we mean .
> . . statements or reports from you, your treating or
> nontreating source, and others about your medical history,
> diagnosis, prescribed treatment, daily activities, efforts
> to work, and any other evidence showing how your
> impairment(s) and any related symptoms affect your ability
> to work. . . .

20 C.F.R. § 404.1529.

Under this framework, the ALJ in this case determined that
Plaintiff could perform unskilled work at all exertional
levels. In ordinary parlance, that means Plaintiff was capable
of working at a job: (1) "which needs little or no judgment to
do simple duties that can be learned on the job in a short
period of time," 20 C.F.R. § 404.1568; and (2) requires the
ability to perform "three work positions (standing, walking,
and sitting) and four worker movements of objects (lifting,
carrying, pushing, and pulling)," SSR 85-15. The record
evidence regarding Plaintiff's Hepatitis C did not impair
Plaintiff's abilities in these areas.

Relatedly, the ALJ properly relied upon the Medical-
Vocational Guidelines, or "Grids," in making her decision that
Plaintiff was not totally disabled and possessed the RFC to

perform unskilled work at all exertional levels.[12]  The

Regulations explain, "Work exists in the national economy when

there is a significant number of jobs (in one or more

occupations) having requirements which you are able to meet

with your physical or mental abilities and vocational

qualifications."  20 C.F.R. § 404.1566(b).  In making this

step five determination, an ALJ is required to take notice of

reliable job information available from various governmental

and other publications, such as the Dictionary of Occupational

Titles, County Business Patterns, Census Reports, Occupational

Analyses, and Occupational Outlook Handbook.  Id.  The ALJ may

also use the services of a vocational expert ("VE").  Id.  A

VE, when presented with a hypothetical claimant mirroring the

relevant impairments of the current disability applicant, can

offer specific examples of available jobs or opine on the

applicant's ability to perform a certain range of work.  Id.

    A vocational specialist is not always required, however,

and an ALJ may solely rely upon the Grids in his step five

analysis.  See SSR 85-15.  "Where there is no exertional

_____

[12] The Grids is a group of clear rules that dictate a finding
of disabled or not disabled based on a claimant's vocational
factors (age, education, and work experience) and individual
RFC.  See Medical-Vocational Guidelines of Appendix 2 of 20
C.F.R. pt. 404, subpt. P, app. 2.

impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work," SSR 85–15, and an ALJ may reply solely on the Grids to meet her burden at step five.

This is exactly the case here. The ALJ determined that Plaintiff's RFC met the parameters of SSR 85–15, and she therefore could rely upon the Grids to show a significant number of jobs in the national economy Plaintiff could perform. The ALJ was permitted to do so.[13] See Allen v. Barnhart, 417 F.3d 396, 404 (3d Cir. 2005) (distinguishing Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), and explaining that where a plaintiff presents only nonexertional limitations, the ALJ's use of the Grids is appropriate in certain circumstances); Cole v. Commissioner of Social Security, 2017 WL 4316876, at *5 (D.N.J. 2017) (discussing "Acquiescence Ruling 01-1(3) - Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) — Using the Grid Rules as a Framework for Decisionmaking When an Individual's Occupational Base is Eroded by a Nonexertional Limitation —

---

[13] It is important to note that unlike situations where the ALJ relies upon the Grids and does not take testimony from a vocational expert, the ALJ in this case posed hypotheticals to a VE and discussed various jobs that Plaintiff was capable and incapable of performing.

Titles II and XVI of the Social Security Act," and noting that AR 01-1(3) does not apply to claims where the ALJ relies upon an SSR (such as SSR-15 applicable here) that includes a statement explaining how the particular nonexertional limitation under consideration in the claim being adjudicated affects a claimant's occupational job base); Dahlhaus v. Astrue, 2012 WL 3283532, at *12 (D.N.J. 2012) (finding the use of the Grids is appropriate where the nonexertional limitations ascribed to a plaintiff by the ALJ limit that plaintiff to unskilled work).

Consequently, the Court finds that the ALJ did not err in her finding that Plaintiff's Hepatitis C was not a "severe impairment," and the ALJ did not err when she determined that Plaintiff had the RFC to perform unskilled jobs at all exertional levels as indicated by the Grids.

## III. CONCLUSION

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh

the evidence or substitute its conclusions for those of the ALJ).  The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of February 27, 2013 is supported by substantial evidence.  The criminal prosecution of Plaintiff's own mental health treatment provider, while unfortunate and indicative of the potential harmful and collateral consequences of health care fraud, does not affect the outcome of Plaintiff's disability claim.  The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date: December 17, 2018                   s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.